Good morning. May it please the court, my name is Patience Milrod. I'm appearing for the appellant Ali Abdul Latif Karaouni this morning. The record before the court shows numerous contacts and statements by my client about his status. This case seems to me a lot simpler than the briefs and the arguments seem to make it. I don't see what all of these statements in the record have to do with anything. The charge is falsely claiming to be a United States citizen when he answered a particular question. Correct. Okay, on a form. Right. The second, the count that was dropped was making a false statement on a form. That charge, whatever it is, is no longer there. We have one simple count, whether he falsely claimed to be a United States citizen when he answered a particular question. That's right. What does all the rest of this have to do with it? The question says, are you a United States citizen or a United States national? And he said, yes. Isn't it a nice, simple, legal question whether that answer is false? Not whether the answer is false, whether in the answer he claims to be a United States citizen when he said he was either a United States citizen or a United States national. Was he making a false claim to be a citizen? Isn't that all there is to the case? Well, the Court has put it with enviable clarity. That false claim element of the count on which Mr. Karhouni was tried effectively encompasses two inquiries. Did he claim to be a citizen? Was that claim false? Yes. Now, if he claimed to be a citizen, he clearly was not a citizen. It's not an issue about whether that claim would have been false if he had made it. What the government showed was that he checked off the St. Agnes Medical Center I-9. He checked off the box that said he is a citizen or national of the United States. Now, that is a necessary but not sufficient condition to a conviction on this of or on this charge. What that tells the jury, the fact that he checked that box, is that he claimed to be a citizen or a national. He did. It does not establish that he specifically intended to claim citizenship. It's not a question of specifically intended, whether he did claim to be a citizen. When he checked that box, did he claim to be a citizen? The assumption. Can you give a yes or no answer to that when he said? No. He checked a box that comprised a compound question. The compound question, are you a citizen or are you a national? He checked that box, yes. His check mark could as easily have been construed. And in fact, the only thing it means is that he claimed to be a citizen or a national. It does not establish that he claimed to be a citizen. And it was the government's burden to show that he claimed citizenship. The government failed to meet that burden. All right. What more is there to your argument than that? There is the ---- Why do you ---- all right. Tell me why you go beyond that in the argument. Well, we understand clearly what our burden is when we make a sufficiency of the argument, a sufficiency of the evidence argument. And in this case, I think it's incumbent on me to satisfy the Court why the remainder of the evidence doesn't answer the question, what was he claiming? What other evidence can bear on that question, whether he claimed to be a citizen when he checked that box? What does it mean? Could there have been? There could have been the kind of evidence that we saw in DiPrato, which was this is a person who had made claims in the past of citizenship, not true of my client. Or this is a person who in other circumstances had made false responses on immigration documents, not true of my client. There was not evidence that would ---- that on the basis of which the jury could have done anything but speculate about what he meant when he checked that box. That's the substance of our argument. All right. Thank you. The question that I have is not before us, but I have to ask the question. He was in jail for nine months before he went to trial. What was that all about? An excellent question. I wasn't trial counsel, as the Court's aware. I can only speculate. This is post-9-11. He's a Lebanese national. He had had a deportation order issued in February of 1995. There may have been a detainer. That's my best guess. Well, I know, but he was arrested on this charge. And then nine months later, his trial. Wasn't there a violation or was there a violation of the Speedy Trial Act? You know, I did not parse the record for the kinds of findings that the judge would have made on continuances, and I don't know the answer to that question. I do know that he had more several times overtimed out by the time he was actually sentenced. But you haven't had a chance to talk to him because he's not here. Well, actually, I've had some telephone conversations with him. He's phoned me. But I don't know the answer to that question. Okay. Thank you, counsel. I'd like to reserve my 4 minutes and 16 seconds for rebuttal. You are not defense counsel. No. All right. Counsel. Good morning, Your Honors. May it please the Court, David Gappa from the United States Attorney's Office, Eastern District of California, Fresno. You had a perfectly good charge, count two, on which you could have convicted  You dropped that and you charged him with something you can't convict him of. Well, Your Honor, I would disagree. I believe that Why did you drop count two? Count two says he made a false statement when he said he was a citizen or a national, when he wasn't either a citizen or a national. That was fine. But that you drop and you say he lied by saying he was a citizen when he didn't say he was a citizen. He said he was a citizen or a national. He could have said are you a citizen or a Bulgarian. Would that have been a claim that he was a citizen? I would say at that point, Your Honor, it's a question for the jury because That's not a question for the jury. It's a question of law. When you say are you an American or a Bulgarian and you say yes, are you claiming to be an American? The answer is no. You don't need a jury for that. That's a question of law. I can't tell you how many of these cases we get where the person comes in. We had one last year where they said to him, were you married on January 5th? And when we got through questioning him, the government said if he said yes, it would have been perjury. If he said no, it would have been perjury. Does the question mean is that the date on which you were married? Or were you in a state of marriage on that date? I mean, this is a nice simple legal question. If a jury found him guilty, you'd have to reverse the conviction. Your Honor, I would suggest that in this Court's decision in United States v. Coulaton from last year that where there is any ambiguity in a falsely answered question that It's not an ambiguity. It's not ambiguous. The question is are you one of two things? And when you say yes, I'm one of two things, you're not you may be lying. You could get him for perjury. As I said, count two would have been perfectly proper count. It's not that the question is ambiguous. But you can't say if you ask him are you either A or B, you can't convict him for claiming to be A. If he says yes, I'm either A or B. It's not a question of ambiguity. It's just a question of a moderate amount of common sense. Your Honor, I would respectfully disagree. If we look at what he was charged with making the false statement about, it's that I attest under penalty of perjury that I am a citizen or national of the United States. Now, to the extent that there is a question of did he say citizen or national, then I think you look at the context of the form and all of the evidence. That's what this Court said in Coulaton. The Court said the Court must consider the context of the question and the defendant's answer as well as other extrinsic evidence relevant to the defendant's understanding of the question posed. So, Your Honor, when we look at the form, I think the question of the understanding is are you a citizen or a national? One or the other. Are you? And his understanding was that how could you misunderstand what that means? It means are you one or the other? And if you're either one, you say yes. Well, Your Honor, for him not to be convicted under the 9-11 count, the only way that would be possible is if he subjectively believed that he was claiming to be a national of the United States. No. He could have lied about being a national. That doesn't make him guilty of 9-11. Well, Your Honor. It makes him guilty of the count you dropped. I disagree that it's not possible to have this conviction, Your Honor. The defendant went to trial, made a Rule 29 motion. The district court said that there was a jury question here. Well, the district court was wrong as far as I'm concerned. I mean, that's not a – I'm not speaking to three judges. And I – you know, we usually don't say this in the argument, but this is a very simple question. And we have to all look at about three words and see what it is. It's not a complicated problem. And it doesn't matter what – you know, he may well have not thought that he was a national. Maybe he did think he was a national. I don't know. Maybe he lied about being a national. But that's exactly at your – But it doesn't matter whether he lied about being a national. But, Your Honor, you've just thrown out possibilities, and that's why – I said, no, they're all irrelevant. They're all irrelevant because he never said he was a citizen. But he did, Your Honor. He said he was either a citizen or a national. And therefore, it's up to the jury to decide what did he state. Did he state, I am a citizen? Nothing to decide. He said, I am a citizen or a national, is what he said. I am either an American or a Bulgarian. You guess. That's what he said. I'm one of two things. Now, saying I'm one of two things is not representing that I'm – that I am either of those two things. But, Your Honor, I would suggest also that on the sufficiency of the evidence And, you know, to say that there is – that that lets somebody escape, you know, criminal prosecution and committed an offense, that's not true either. Because in the same sheet of paper, you have the offense that he committed, that he was – could have been convicted of, and that you decided not to try him. Well, whoever made that decision made a mistake. But anyway, you got him in jail for a year for something he didn't do, so you don't have to feel too badly about losing the case. Well, Your Honor, I would, again, respectfully disagree that he could not be convicted for making this statement, because the statement is, I am a United States citizen or a national. Or a national. Correct. And what is a national? A national is a citizen of the United States or somebody who is not a citizen who owes permanent allegiance to the United States. Who is not a citizen. So he could have been answering, I am not a citizen. And then how can you convict him of saying I am a citizen? Your Honor, I just respectfully disagree about that. What about the nine months? There was, to answer the Court's question about that, there was no violation of the Speedy Trial Act. He was represented by counsel from the beginning, and time was excluded with the exception of a few days at the beginning, because defense counsel kept asking for time to prepare, and there were discussions about resolving the case short of trial. I believe there was still adequate time on the Speedy Trial Clock at the start of the trial. Was it explained to him? Did he waive his right to a Speedy Trial? He may have incompetent counsel. Maybe that's an issue in this case, too. Well, when he was in court, each time time was excluded on various grounds, primarily for defense preparation. So that time was not coming off of the Speedy Trial Clock. And he was present, I believe, for each of those sessions. And he agreed to waive. It takes nine months to prepare yourself for this kind of a case? Your Honor. All you needed was a dictionary. I'm sorry? I said all you needed was a dictionary. You didn't need to prepare anything. Anyway, it's really upsetting, you know, to think that people lounge around in jail for nine months on a case like this, but counsel says I have to prepare. And what's there to prepare? Your Honor, I can't speak for defense counsel. The government was prepared to proceed. I understand. This voice in my concern is old. Yeah. One of the most disturbing things is it happens almost every calendar, is we get a case with his merit to the case, and the person's already completed his term. And that's not, it seems to me, the way the system's supposed to work, where you serve your sentence and then get a reversal. But that's a different problem also from the one that Ferguson mentions, which is sitting in jail for nine months awaiting a trial, where, I mean, let's say it's questionable whether you're guilty. I mean, you shouldn't sit in jail for nine months. But, Your Honor, I would, again, disagree, because there was never a motion to dismiss the indictment. That argument was never raised. But that's not whose fault it is. I'm just saying it shouldn't happen in the legal system, that you sit in jail for nine months, and you get a reversal, unless you have some kind of a tremendous menace and you've committed a serious offense. See, what we're saying is the U.S. attorney has a duty not only to obtain convictions, but also has a duty to approve the system. And sometimes approving the system requires you to take a position that the defendant should take. Well, Your Honor, I would suggest the government would be very fair in this case in that it did bring two charges, allowed him the opportunity to plead to, in the government's view, the less serious charge, the charge which would have the less serious immigration consequences. And when the time for sentencing came, we did not ask even for time served. We agreed for a 90-day sentence. We believe it was a righteous prosecution. What difference did it make? He served nine months. You could have given him a nine-month sentence. It would have been the same. Well, Your Honor, we didn't do him any big favor by making it three months. Your Honor, we were prepared to proceed to trial. We believed it was a righteous prosecution, and that it was. Righteous? Well, that's going a little far. Self-righteous prosecution, maybe. But righteous, it's not. Well, anyway, it's really not very significant at this point, except we're really not picking on you. Thank you for your time, Your Honor. Now, go back and tell them you tried hard. I'm sorry? Go back and tell them you tried hard and that you did a good job.  Thank you. Thank you, Your Honor. You're not really going to make a rebuttal. I'm waiving my four minutes and 16 seconds. Thank you. Thank you. Case just argued and submitted. We'll take another short break. Thank you. Thank you. Thank you. This was the fastest run on a daytime. I mean, I was out at the Sacramento Federal Courthouse, and I was here. That's really good. There was no backup on the main bridge. There was no backup anywhere else. Well, see, that's what – it'd be nice to be able to – if you could see that you're locked on a calendar, to be able to say, you know, you never send. You would have would all the time. Yeah. And normally, I wouldn't trust it, but I think – you know, like, our kids are out in Woodlawn this week. Some schools had last week, but they still used to break down, and I think it's likely to cut a little bit. You think so? Yeah. I was stuck in traffic on – I was pulling in right, you know, right around 8-ish. So probably right from the El Toro, I think, El Toro, right from there, it was just backed up, and it was just, I mean, how long is it going to take? But I think it still took me about two hours to get there. I got there around 7-ish times. From where? From Sacramento. Yeah. It's like 7-15. It took me about two hours. Yeah. That's the thing. But you can easily make it an hour and a half in good traffic. Yeah. If you leave it to your time, it takes two hours. If you leave it a half hour later, it takes an hour and a half. Yeah. Yeah. Exactly. You know, what I do, if I have any wiggle room, is drop the cart and cut it and take part of it. Cutting? Cutting board. Oh, okay. Just off. It's where the BART station is off to the left. Right there. Oh, that's a good idea. And then does it take you right down here? Yeah. You can see the courthouse from the BART station. From Citizen Park. Sixth and Park. Whatever. It's Civic Center. No, it's Mission. Well, it's Mission, but it's one block away. Okay. If you walked up to Market, you would see the BART station.  So you don't have any main street. So you don't have any main street. So you don't have any main street. So you don't have any main street. It's a good idea. And you can get BART scheduled here pretty good. I have another one on Friday. Look at the BART.gov. Www.bart.gov for the schedule. And you can just park there and you'll miss this whole mess. Yeah. I think Thursday's actually my birthday. So I'm going to come on Thursday with my dad. We're going to go out to dinner and then stay the night. Stay great.        I'll show you. Yeah. We'll take a little trip. We'll take a little trip. Yeah. This is a good city. Good restaurants. Yeah. Yeah. Yeah. Yeah. Yeah.  Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah.
judges: Ferguson, Reinhardt, Paez